UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

STASON SUTTON                                              CV

                                    Plaintiff,

          -against-                                        **COMPLAINT**

130W42 OPCO LLC AND MIXX LIFESTYLE INC.                   **JURY TRIAL REQUESTED**
D/B/A NEBULA

                                    Defendants.
-----------------------------------------------------------------x

<u>**COMPLAINT**</u>

Plaintiff Stason Sutton (hereafter referred to as "Plaintiff"), by counsel, Parker

Hanski LLC, as and for the Complaint in this action against Defendants 130W42 OPCO

LLC and Mixx Lifestyle Inc. d/b/a Nebula (together referred to as "Defendants"), hereby

alleges as follows:

<u>**NATURE OF THE CLAIMS**</u>

1.      This lawsuit opposes pervasive, ongoing, and inexcusable disability

discrimination by the Defendants.  In this action, Plaintiff seeks declaratory, injunctive,

and equitable relief, as well as monetary damages, nominal damages, and attorney's fees,

costs, and expenses to redress Defendants' unlawful disability discrimination against

Plaintiff, in violation of Title III of the Americans with Disabilities Act ("ADA") 42

U.S.C. §§ 12181 *et. seq.* and its implementing regulations; the New York State Human

Rights Law ("NYSHRL"), Article 15 of the New York State Executive Law ("Executive

Law"); the New York State Civil Rights Law, § 40 *et. seq.*; and the New York City

Human Rights Law ("NYCHRL"), Title 8 of the Administrative Code of the City of New

York ("Administrative Code")*.*  As explained more fully below, Defendants own, lease,

1

lease to, operate, and control a place of public accommodation that violates the above-mentioned laws. Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.      These Defendants made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught. In so doing, Defendants made a calculated, but unlawful, decision that disabled customers are not worthy. The day has come for Defendants to accept responsibility. This action seeks to right that wrong via recompensing Plaintiff and making Defendants' place of public accommodation fully accessible so that Plaintiff can finally enjoy the full and equal opportunity that Defendants provide to non-disabled customers.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 12188, and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA. The Court has supplemental jurisdiction over Plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination alleged herein occurred in this district and Defendants' place of public accommodation that is the subject of this action is located in this district.

## PARTIES

5.      At all times relevant to this action, Plaintiff Stason Sutton has been and remains currently a resident of New York, New York.

6.      At all times relevant to this action, Plaintiff Stason Sutton has been and remains a wheelchair user.  Plaintiff has medical conditions that inhibit walking and restrict body motion range and movement.

7.      Non-party Ryan L.L.C. owns the property located at 135 West 41st Street in New York County, New York (hereinafter referred to as "135 West 41st Street").

8.      In 2013, Ryan L.L.C. entered into a ground lease with 130 West 42nd Development Owner LLC, by which it transferred legal interest and control of 135 West 41st Street for 85 years.

9.       By virtue of an Assignment and Assumption of Sublease dated April 27, 2015, recorded on May 5, 2015, defendant 130W42 OPCO LLC is currently the party holding the legal interest in 135 West 41st Street.

10.      Defendant 130W42 OPCO LLC was and still is a foreign limited liability corporation organized and existing pursuant to the laws of the State of Delaware and licensed to conduct business in the State of New York with a principal place of business located at 321 Greenwich Street, New York, New York 10019.

11.      The building at 135 West 41st Street runs from West 41st Street to West 42nd Street and also has an address of 130 West 42nd Street.

12.      The building has a total of seven elevators.

13.      At all relevant times, defendant Mixx Lifestyle Inc. d/b/a Nebula leases property located at 135 West 41st Street from the defendant 130W42 OPCO LLC.

14. At all relevant times, defendant Mixx Lifestyle Inc. d/b/a Nebula has and continues to operate a nightclub establishment at 135 West 41st Street doing business as Nebula (hereinafter referred to as the "Nebula" premises).

15. Each defendant is licensed to and does business in New York State.

16. Upon information and belief, 130W42 OPCO LLC and Mixx Lifestyle Inc. d/b/a Nebula have a written lease agreement.

17. On February 14, 2023, Plaintiff went to the Fashion Week show at Nebula. Plaintiff loves Fashion Week and was very excited to attend this event.

18. Upon arriving at the entrance, Plaintiff noticed that there was no wheelchair accessible means of entering Nebula. Nor did Plaintiff observe any signage indicating the location of an accessible entrance or instructions on how a person with a disability could enter the premises.

19. It is important to note that the entrance at Nebula was very crowded when Plaintiff arrived.

20. Plaintiff finally got the attention of a door person to find out if there was a way for him to enter Nebula.

21. The door person at Nebula embarrassed and drew attention to Plaintiff's disability by directing the crowd of people to move away from the entrance so that Plaintiff could enter in his wheelchair.

22. The door person then laid out a portable ramp for Plaintiff to travel from the public sidewalk into the entrance.

23. This portable ramp was dangerous because, for among other reasons, it was very shaky and narrow.

24.     Plaintiff experienced anxiety from having to use this ramp that could tip over and injure him.

25.     This anxiety for his physical safety was in addition to the mental embarrassment caused by the door person drawing attention to Plaintiff's disability in front of a large crowd.

26.     Once inside, Plaintiff loved the interior of Nebula and the unique experience.

27.     Plaintiff enjoyed his experience inside Nebula.

28.     While inside and enjoying Nebula, Plaintiff needed to use the restroom. He looked around and could not locate the restroom.

29.     Plaintiff then went to the bar and asked an employee where the bathroom was.

30.     The employee responded that the bathrooms were on the floor above them.

31.     The employee, however, told Plaintiff that there was no elevator for him to travel to the floor where the bathrooms are located.

32.     Plaintiff observed steps leading to the floor above and did not observe any means of accessible vertical access.

33.     Humiliated again, the architectural barriers at Nebula forced Plaintiff to leave.

34.     As stated before, Plaintiff enjoyed his visit to Nebula and would like to go back there.  But Plaintiff does not want to endure the painful humiliation.

35.     Plaintiff enjoys nightclubs and patronizes them at least once a month.

36.     Nebula is conveniently located near Plaintiff's home.

37.     More specifically, Plaintiff resides on West 44th Street and Nebula is located on West 41st Street in Manhattan.

38.     Plaintiff desires to return to Nebula once he can safely enter the premises and have access to a bathroom.  Until then, Plaintiff is deterred because of the architectural barriers.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

39.     Each of the Defendants is a public accommodation as they own, lease, lease to, control or operate a place of public accommodation, the Nebula premises located at 135 West 41st Street, within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code § 8-102(9)).

40.     The Nebula premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the NYSHRL (Executive Law § 292(9)) and the NYCHRL (Administrative Code (§ 8-102(9)) as it is a facility operated by a private entity and its operations affect commerce.

41.     Numerous architectural barriers exist at the Nebula premises that prevent and/or restrict access to Plaintiff, a person with a disability, which include, but are not limited to, architectural barriers at the paths of travel.

42.     Upon information and belief, at some time after 2016, alterations were made to 135 West 41st Street, including areas adjacent and/or attached to 135 West 41st Street.

43.    Upon information and belief, at some time after January 1992, alterations were made to the Nebula premises, and to areas of 135 West 41st Street related to the Nebula premises.

44.    More specifically, in or around 2020, Defendants spent approximately $650,000 on interior renovations at Nebula such as removing and installing partitions, doors, frames etc.

45.    But Defendants spent no money on making Nebula accessible to wheelchair users.

46.    The services, features, elements and spaces of the Nebula premises are not readily accessible to, or usable by Plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design (hereinafter referred to as the "1991 Standards" or the "1991 ADA") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design (hereinafter referred to as the "2010 Standards" or the "2010 ADA").

47.    Because of Defendants' failure to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, Plaintiff was and has been unable to enjoy safe, equal, and complete access to all of the areas of the Nebula premises that are open and available to the public.

48.     Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, and/or the Building Code of the City of New York ("BCCNY").

49.     Barriers to access that Plaintiff experienced, encountered and/or which deter Plaintiff from patronizing the Nebula premises as well as architectural barriers that exist include, but are not limited to, the following:

I.  The public entrance doorway is not accessible because of a step.
    Defendants fail to provide that at least 50% of all its public entrances are accessible.  See 1991 Standards § 4.1.3.8(a)(i).
    Defendants fail to provide that at least 60% of all its public entrances are accessible. See 2010 Standards § 206.4.1.
    Defendants fail to provide that all its public entrances are accessible.  See § 2014 NYC 1105.1.

II.  There is a step at the exterior side of the public entrance doorway has a change in level greater than ½ inch high.
    Defendants fail to provide that changes in level greater than 1/2-inch high are ramped.  See 1991 Standards § 4.3.8, 2010 Standards § 303.4, and 2014 NYC § 303.3.

III.  Defendants do not provide an accessible route from public transportation stops, accessible parking, public streets or sidewalks to the building entrance that coincides with the general circulation path used by patrons to the public accommodation thereby relegating Plaintiff to a "second class citizen" entrance and exit.  See 1991 Standards §§ 4.3.2(1), 4.1.2(1), 4.1.1(1) and 4.14.1; 2010 Standards §§ 206.1, 206.2, 206.3, 206.2.4, 206.4; and BCCNY § 1104.5.

IV.  The public entrance doorway lacks maneuvering clearances at the door.
    Defendants fail to provide an accessible door with level and sufficient maneuvering clearances.  See 1991 Standards § 4.13.6, 2010 Standards § 404.2.4, and 2014 NYC § 404.2.3.

V.  The property owner defendant failed to provide an accessible entrance to the tenant defendant.  See 1991 Standards § 4.1.3(a)(iii); 2010 Standards § 206.4.5, 404; Administrative Code § 27-362; and BCCNY § 1105.1.6.

VI.  Defendants fail to provide that no changes in level exist inside the required minimum maneuvering clearance at the ground space in front of the public entrance door.  See 1991 Standards §§ 4.37, 4.13.6, 4.3.8, 4.5.2; and 2010 Standards §§ 305.2, 302, 304.2, 404.2.4.4.

VII.   Defendants fail to provide access to the non-ground levels due to steps, and no elevator exists to take a wheelchair user to the non-ground levels.  42 U.S.C. § 12183(b); and 28 C.F.R. §§ 36.404(a) and 36.401(d)(2); See 1991 Standards §§ 4.1.3, 4.1.6; and the 2010 Standards §§ 206.2.2, 206.2.3, 206.2.3.1, 206.2.4, 206.2.6.

VIII.  The interior space of defendants' public accommodation is not accessible and usable to the disabled Plaintiff.  See Administrative Code §§ 27-292.10 and 27-292.5.

IX.   Defendants fail to provide a level floor surface as the surface is interrupted by changes in level of greater than ½ inch thereby creating a dangerous condition to Plaintiff.  See 1991 Standards §§ 4.3.8, 4.5.2; and 2010 Standards §§ 303.2, 303.3, 303.4.

X.   Defendants fail to provide a level floor surface as the floor surface is interrupted by changes in level of greater than ¼ inch and less than ¾ inch above the finished floor without beveling.  See 1991 Standards § 4.5.2, 4.1.6(3), 4.13.8, 4.1.3(7)(a); and 2010 Standards §§ 303.3, 404.2.5, 206.5.1, 206.4.1.

XI.   Defendants fail to provide that at least one of each type of bar and/or service counter is accessible and dispersed throughout its premises.  See 1991 Standards § 7.2; 2010 Standards §§ 227.3, 227.1, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

XII.   Defendants fail to provide that at least one of each type of function counter is accessible and dispersed throughout its premises.  See 1991 Standards §§ 7.2, 7.3(1); 2010 Standards §§ 227.3, 904; and BCCNY §§ 1109.12, 1109.12.3.

XIII.  Defendants fail to provide a portion of the bar and/or service counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length thereby making it impossible or exceedingly difficult for the Plaintiff to conduct a transaction in a manner similar to non-disabled customers.  See 1991 Standards § 7.2; 2010 Standards §§ 227.1, 227.3, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

XIV.  Defendants fail to provide at least 5% of the table surfaces provided to customers are accessible and dispersed throughout its premises.  See 2010 Standards §§ 226.1, 226.2, 902; and BCCNY § 1109.11.

XV.   Defendants fail to provide that at least one and not less than 5% of seating and standing spaces and/or dining surfaces are accessible and dispersed throughout the premises.  See 1991 Standards §§ 4.1.3(18), 4.32, 5.1; 2010 Standards §§ 226, 226.1, 226.2, 902.1; BCCNY §§ 1108.2.9.1, 1109.11; and Administrative Code § 27-292.10(3).

XVI.   Defendants fail to provide an accessible route of at least 36 inches of minimum width to all dining areas and seating.  See 1991 Standards §§ 5.3, 4.32.2; 2010 Standards §§ 403, 206.2.5, 902.2; and BCCNY § 1108.2.9.

XVII.   Defendants fail to provide the minimum required maneuvering clearances of level and clear space in front of the seating for dining.  See 1991 Standards §§ 4.32.2, 5.3; and 2010 Standards §§ 305.3, 802.1.2, 802.1.3, 902.2, 903.1, 903.2, 902.4.1.

XVIII.   Defendants fail to provide dining tables and/or surfaces that are at an accessible height.  See 1991 Standards §§ 4.32.4, 5.1; and 2010 Standards § 902.3.

XIX.   Defendants fail to provide dining tables and/or surfaces that have the minimum required knee clearances.  See 1991 Standards §§ 4.32.3, 5.1; and 2010 Standards §§ 305.4, 306.

XX.   Defendants fail to provide dining tables and/or surfaces that have the minimum required toe clearances.  See 1991 Standards §§ 4.32.3, 5.1; and 2010 Standards §§ 305.4, 306.

XXI.   Defendants fail to provide a bench seat of sufficient length or depth.  See 2010 Standards § 903.3.

XXII.   Defendants fail to provide that the top of the bench seat is between 17 inches and 19 inches above the finished floor.  See 2010 Standards § 903.5.

XXIII.   Defendants fail to provide a bench seat with the minimum required back support. See 2010 Standards § 903.4.

XXIV.   Defendants fail to provide access to the other levels of its restaurant and the toilet room is not located on the main floor.  See Administrative Code § 27-292.5(e).

XXV.   Defendants fail to provide access to all the dining areas.  See 1991 Standards § 5.4; and the 2010 Standards §§ 206.5, 206, 403.

XXVI.   Defendants fail to provide access to the non-ground levels due to steps, and the service and décor in the non-ground levels is different.  See 1991 Standards §§ 5.4, 4.3; and the 2010 Standards §§ 206.2.5, 206, 402.2.

XXVII.   Defendants fail to provide an accessible portion of its counter and bar and no accessible tables exist in the same area.  See 28 C.F.R. §36.302; 1991 Standards §§ 4.1.3(18), 5.2, 5.1, 4.2.4, and 4.32; and 2010 Standards §§ 226.1, 902.2, 305, 306, 902.3.

XXVIII.   Defendants fail to provide an accessible public toilet room.  See Standards §§ 4.23, 4.18, 4.19, 4.17, 4.24, 4.22, 4.1.6(e) and 4.1.3(11); 2010 Standards §§ 213.1,

10

213.2, 603.1, 604, 605, 606; Administrative Code §§ 27-292(b), 27-292.12, RS-16, and P104.09(c); and BCCNY § 1109.2.

50.     The remediation necessary to provide an ADA compliant wheelchair accessible entrance are known, architecturally possible, and financially achievable for the defendants.  Possible remediation includes installation of a permanent exterior wheelchair accessible ramp; installation of an incline platform lift; raising the level of the sidewalk; or installation of a permanent interior wheelchair accessible ramp.

51.     In fact, the building at 135 West 41st Street has other retail establishments. Before 2018, the other retail establishments had steps to enter.

52.     In or around 2018, an application was filed with the New York City Department of Buildings to remove the existing storefront and stairs to provide "ADA Access to retail spaces at 41st Street".

53.     Thereafter, new ground level entrances were created by removing the steps and shifting the adjoining interior floor levels.

54.     Upon information and belief, a full inspection of the Nebula premises will reveal the existence of other barriers to access.

55.     As required by the ADA (remedial civil rights legislation) to properly remedy Defendants' discriminatory violations and avoid piecemeal litigation, Plaintiff requires a full inspection of the Nebula premises in order to catalogue and cure all of the areas of non-compliance with the ADA.  Notice is therefore given that Plaintiff intends to amend the Complaint to include any violations discovered during an inspection that are not contained in this Complaint.

56.     Defendants have denied Plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

57.     Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws. Nor have Defendants made or provided accommodations or modifications for persons with disabilities.

58.     Plaintiff has a realistic, credible, and continuing threat of discrimination from the Defendants' non-compliance with the laws prohibiting disability discrimination. The barriers to access within the Nebula premises continue to exist and deter Plaintiff.

59.     Plaintiff resides near and frequently travels to the Times Square Area where Nebula is located.

60.     Plaintiff intends to patronize the Nebula premises several times a year after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

61.     Plaintiff is also a "tester" for the purposes of asserting basic civil rights and monitoring, ensuring, and determining whether the Nebula premises is fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

62.     Plaintiff intends to patronize the Nebula premises several times a year as "tester" to monitor, ensure, and determine whether the Nebula premises is fully accessible and compliant with the 1991 Standards or the 2010 Standards, and the Administrative Code.

**FIRST CAUSE OF ACTION**
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)**

63.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

64.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of Plaintiff's disability, Plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

65.     The ADA imposes joint and several liability on both the property owner and lessee of a public accommodation.  28 C.F.R. 36.201(b).

66.     Under the ADA, both the property owner and lessee are liable to the Plaintiff, and neither can escape liability by transferring their obligations to the other by contract (i.e., lease agreement).  28 C.F.R. 36.201(b).

67.     Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to use their place of public accommodation all because Plaintiff is disabled.  Defendants' policies and practices have and continue to subject Plaintiff to disparate treatment and disparate impact.

68.     By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

69.     Defendants have discriminated against the Plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled Plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards.  See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

70.     The Nebula premises are not fully accessible and fail to provide an integrated and equal setting for people with disabilities, in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

71.     Defendants failed to make alterations accessible to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2).

72.     The paths of travel to the altered primary function areas were not made accessible in violation of 28 C.F.R. § 36.403.

73.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make Defendants' place of public accommodation fully accessible.

74.     By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

75.     In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

76.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

77.    Defendants have and continue to discriminate against Plaintiff in violation of the ADA by failing to maintain and/or create a wheelchair accessible public accommodation.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE HUMAN RIGHTS LAW)

78.    Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

79.    Plaintiff has various medical conditions that separately and together prevent the exercise of normal bodily functions in Plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore has from a disability within the meaning of the Executive Law § 296(21).

80.    In 2019, the New York State legislature enacted legislation that provides effective immediately that the New York State Human Rights Law shall be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed".  See Executive Law § 300 [effective date: August 12, 2019].

81.    By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005 (Local Law 85 of 2005), the New York State legislature confirmed the legislative intent to abolish parallel construction between the New York State Human Rights Law and related Federal anti-discrimination laws.

82.    Defendants have and continue to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because Plaintiff is disabled.

83.     Defendants discriminated against Plaintiff in violation of NYSHRL (Executive Law § 296(2)), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the Defendants have aided and abetted others in committing disability discrimination.

84.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of NYSHRL (Executive Law § 296(2)(c)(iii)).

85.     In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of NYSHRL (Executive Law § 296(2)(c)(iv)).

86.     It would be readily achievable to make Defendants' place of public accommodation fully accessible.

87.     It would not impose an undue hardship or undue burden on Defendants to make their place of public accommodation fully accessible.

88.     As a direct and proximate result of Defendants' unlawful discrimination in violation of NYSHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

89.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)**

90.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

91.     Plaintiff has various medical conditions that separately and together, impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range - and thus Plaintiff has a disability within the meaning of the NYCHRL (Administrative Code § 8-102(16)).

92.     Defendants have and continue to subject Plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).  Each of the Defendants have aided and abetted others in committing disability discrimination.

93.     Defendants have and continue to commit disability discrimination in violation of the Administrative Code (inclusive of § 8-107(4)) because of the violations of the ADA as alleged herein.

94.     Defendants have discriminated, and continue to discriminate, against Plaintiff in violation of the NYCHRL (Administrative Code § 8-107(4)) by designing, creating and/or maintaining an inaccessible commercial facility/space.

95.     Defendants have subjected, and continue to subject, Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the NYCHRL (Administrative Code § 8-107(4)).

96.     Defendants' policies and procedures inclusive of the policies of refusing to expend funds to design, create and/or maintain an accessible commercial facility/space is a discriminatory practice in violation of NYCHRL (Administrative Code § 8-107(4)).

17

97.    In violation of the NYCHRL (Administrative Code § 8-107(6)), Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the NYCHRL.

98.    Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, 130W42 OPCO LLC continuously controlled, managed, and operated the public sidewalk abutting 135 West 41st Street, which includes the portion of the sidewalk constituting the entrance to Defendants' place of public accommodation.

99.    130W42 OPCO LLC's failure to construct and maintain an accessible entrance from the public sidewalk to Defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

100.    Defendants' conduct also violates the NYCHRL, Administrative Code 8-107 (17), which states that "an unlawful discriminatory practice . . . is established . . . [when Plaintiff] demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."

101.    Because Defendants' public accommodation is not readily accessible and usable by people with disabilities, Defendants have demonstrated a policy or practice that has a disproportionately negative impact on people with disabilities (including Plaintiff).

102.    Defendants' conduct constitutes an ongoing and continuous violation of the NYCHRL.  Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.  In particular, Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' public accommodation.

103.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, and embarrassment.

104.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the NYCHRL.

105.    By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

106.    Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to NYCHRL (Administrative Code § 8-502).

107.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have

lawfully expended to pay for a fully compliant and accessible space. Defendants'

unlawful profits plus interest must be disgorged.

108.    Plaintiff has suffered and will continue to suffer damages in an amount to

be determined at trial.

## FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

109.    Plaintiff realleges and incorporates by reference all allegations set forth in

this Complaint as if fully set forth herein.

110.    Defendants discriminated against Plaintiff pursuant to New York State

Executive Law.

111.    Consequently, Plaintiff is entitled to recover the monetary penalty

prescribed by Civil Rights Law §§ 40-c and 40-d for each and every violation.

112.    Notice of this action has been served upon the Attorney General as

required by Civil Rights Law § 40-d.

## INJUNCTIVE RELIEF

113.    Plaintiff will continue to experience unlawful discrimination because of

Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive

relief is necessary to order Defendants to alter and modify their place of public

accommodation and their operations, policies, practices, and procedures.

114.    Injunctive relief is also necessary to make Defendants' facilities readily

accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

115.    Injunctive relief is further necessary to order Defendants to provide

auxiliary aids or services, modification of their policies, and/or provision of alternative

methods, in accordance with the ADA, NYSHRL, and the NYCHRL.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A. Enter declaratory judgment declaring that Defendants have violated the ADA and its implementing regulations, NYSHRL and NYCHRL and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B. Issue a permanent injunction ordering **Defendants to close and cease all business** until Defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, NYSHRL and NYCHRL, including but not limited to the violations set forth above;

C. Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D. Award Plaintiff compensatory damages and nominal damages because of Defendants' violations of the NYSHRL and the NYCHRL;

E. Award Plaintiff punitive damages to punish and deter the Defendants for their violations of the NYCHRL;

F. Award Plaintiff the monetary penalties for each violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

G.  Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the NYCHRL, and the ADA; and

H.  For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: December 10, 2023
        New York, New York

Respectfully submitted,

**PARKER HANSKI LLC**


By:____/s_____
        Glen H. Parker, Esq.
        Attorneys for Plaintiff
        40 Worth Street, Suite 602
        New York, New York 10013
        Telephone: (212) 248-7400 ex. 15
        Facsimile: (212) 248-5600
        Email: ghp@parkerhanski.com